26 C.C.P.A. (Patents)

## In re WALTER.

### Patent Appeal No. 4062.

Court of Customs and Patent Appeals.

Feb. 27, 1939.

Roy W. Johns, of Chicago, Ill., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner denying patentability of the two claims of an application for patent for sausage casings, the claims reading:

"2. An artificial pork sausage casing comprising relatively thin cellulose acetate walls of cylindrical shape, prepared from sheeting and having an overlapped fused joint.

"3. A pork sausage package comprising a cellulose acetate casing prepared from sheet cellulose acetate having the edges fused with a solvent forming a substantially cylindrical package tied at the ends."

Four patents were cited as references, viz.:

Faber, 1,659,399, February 14, 1928.

British patent, 292,582, April 11, 1929.

German patent, No. 480,422, August 1, 1929.

Walsh, 1,950,954, March 13, 1934.

As appears from the claims appellant's casing is prepared from thin cellulose acetate sheeting formed into cylindrical shape with overlapped edges, the edges being fused with a solvent. Claim 3 embraces also a feature of tied ends, but the brief for appellant concedes that this feature is shown by the German patent and states that "It is not urged that this feature is sufficient to confer patentability on the claim." It is urged, however, that the claim is patentable by reason of its other limitations, although in oral argument counsel for appellant went so far as to concede that if claim 2 be not patentable then claim 3 is not. However, he insisted that the converse of this is not true and that claim 3 might be found non-patentable and claim 2 at the same time allowed.

The examiner referred to the British patent as the basic reference.

This patent, which contains both product and method claims, has no drawing, but discloses a casing made of "cellulose regenerated from its solutions; viscose, cuproammoniacal solution, denitrated nitro-cellulose, etc." The casing is declared to be valuable because it permits moist substances such as sausages, jam, honey, etc., to be preserved; also it is said that the casing allows the "smoking, curing, cooking, sterilizing etc." of its contents. It is taught that in the process of manufacture the cellulose sheet "is wrapped round a mandrel of suitable diameter in such a manner that the two parallel edges of the sheet overlap slightly, the said two edges are then united together not by a mere gluing but by positive autogenous welding, that is to say the two edges of the sheet are so dissolved by means of a suitable solvent as to pentrate one another and make a jointless union, this feature being the characteristic feature of the invention whereby the casing obtained is suitable for containing moist substances without possibility of opening along the joint." It is said further in the specification that any suitable solvent may be used for the autogenous welding, concentrated chloride of zinc being given as an example.

It appears that the material used by appellant (cellulose acetate) is different from the material (regenerated cellulose) used in the patent, but it was the view of the examiner that no invention was involved in appellant's substitution of material, "particularly in view of the secondary art," as shown in the patents to Faber and Walsh.

In the decision of the board the principal emphasis seems to be placed upon the Walsh and Faber patents. It contains no specific expression of opinion upon the question of substitution of materials. Its decision says:

" * * * Faber states that viscose may be used instead of a solution of acetyl cellulose in making seamless containers. Faber does not, however, state that cellulose is equivalent for cellulose acetate as a container material for moist articles.

"Walsh is concerned with a cementing agent for cellulose plastics particularly cellulose acetate and for this purpose Walsh uses a mixture of solvents for the plastic, the ingredients of the mixture having different boiling points. Walsh states that his solvent mixture may be used with viscose products. The teaching of the Faber patent is to make an air-tight cellulose acetate receptacle of sections overlapped and united at the seam by cement. Walsh teaches the use of specific solvent mixtures to be used with cellulose acetate plastics.

"It is our opinion that the method of preparing the package from sheeting is independent of the package itself, to which the claims are directed, and we believe that the Faber patent itself discloses the receptacle of claim 2 with an overlapped fused

joint * * *. The word, 'fused', as used in the claims, is defined at the end of page 3 of applicant's specification as the same effect as that described by Walsh and we are of the opinion that claim 2 is devoid of invention over Faber in view of Walsh as it is obvious to use the solvent described by Walsh in cementing the overlapping edges described by Faber.

"As to claim 3, we see no invention in tying the package at the ends and this feature is shown in the German patent."

Before us the purport of the argument by counsel for appellant is that the British patent makes no suggestion of the possibility of employing cellulose acetate in the manufacture of sausage casings which, the brief states, was a material well known prior to the date of that patent; that the Faber patent makes no suggestion of a fused joint within the meaning of the term as used in appellant's application; that it never occurred to Faber that the joints could be fused; that the patent to Walsh is not concerned with end products of a casing; that while cellulose acetate and regenerated cellulose produced · from viscose may be equivalents for the purposes of Faber or of Walsh it does not follow that they would be equivalents for the purposes of the British patent; that appellant discloses a sausage casing entirely unlike any sausage casing previously used in the art thereby making a specific and valuable contribution to an already crowded art and that the decision of the board rests "on broader grounds than is warranted by the breadth of the claims involved."

Respectful consideration has been given the quite interesting presentation made by counsel who, particularly in his oral argument, entered at some length into the philosophy of certain phases of the patent law, but, in view of the state of the art as depicted in the references, we are unable to accredit appellant with an invention. Faber's patent impresses us as being quite broad. The drawings as described in the specification appear to be limited to cigar-protecting devices, with molds for making same, and a preferred form of container for "granular or pulverized articles," but the specification as a whole seems clearly broad enough to embrace articles precisely similar in material and design (except for the tied ends) to the casing of appellant. It may be conceded that Faber does not specifically teach the making of a fused joint or seam of the same type as that of appel-

lant, but so far as the seam *or structure* is concerned it is shown by the British patent, and the Walsh patent makes it clear that fusing by use of a solvent may be applied to the material used by appellant as well as to the material used in the British patent.

The decision of the Board of Appeals is affirmed.

Affirmed.